UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CHEP USA, )
           Plaintiff, )   Case No.:
v. )
Cienfuegos Pallets Corp. )
           Defendant. )

## VERIFIED COMPLAINT

Plaintiff CHEP USA ("CHEP"), through its undersigned counsel, sues Cienfuegos Pallets, Corp. ("Defendant").

### PARTIES

1. CHEP USA is a New York General Partnership with its principal office at 5897 Windward Parkway, Alpharetta, Georgia 30005. The partners of CHEP USA are Brambles North America Incorporated and Brambles Industries, LLC. Brambles North America Incorporated is a Delaware Corporation with its principal office at 5897 Windward Parkway, Alpharetta, Georgia 30005. Brambles Industries, LLC is a Delaware LLC with its principal office at 5897 Windward Parkway, Alpharetta, Georgia 30005. The sole member of Brambles Industries, LLC is Brambles North America Incorporated, a Delaware Corporation with its principal office at 5897 Windward Parkway, Alpharetta, Georgia 30005.

2. Upon information and belief, Defendant is a Florida profit corporation authorized to do and is doing business in Miami-Dade County, Florida. According to the Florida Secretary of State website, Defendant has a principal address of 11000 NW 36th Avenue, Miami, FL 33167. Further according to the Secretary of State website, the registered agent and principal is listed as

Zoila Hernandez at 18821 Wentworth Drive, Hiealeah, FL 33015. Upon information and belief, Defendant operates at a minimum of two locations: (i) 11000 NW 36th Avenue, Miami, FL 33167; and (iii) 7781 NW 73rd Court, Medley, FL. Zoila Hernandez and her husband Felix Hernandez run Defendant's business operations.

3. Defendant is engaged in conduct inconsistent with CHEP's ownership rights in CHEP's pallets through Defendant's possession, sale, and disposition of CHEP's pallets, as detailed herein.

## JURISDICTION AND VENUE

4. Jurisdiction and venue are proper in this Court. CHEP does not share a state of citizenship with Defendant. The amount in controversy exceeds $75,000. This is also an action seeking a writ of replevin and declaratory judgment regarding CHEP's property (*i.e.*, the CHEP pallets) located in Miami-Dade County, Florida. Defendant is located in Miami-Dade County, Florida, does business in Miami-Dade County, Florida, and the inclusion of the Defendant arises out of facts supporting jurisdiction over Defendant.

5. All conditions precedent to bringing this Civil Action have been performed or have occurred.

## FACTUAL BACKGROUND

### Pallets and Commerce

6. Typically, as goods move in commerce from their manufacturers, to distributors, to wholesalers, and finally to retailers, where they are made available for purchase by the average consumer, wooden pallets are used for purposes of hauling, loading and unloading, and storing the goods.

7. In general, the majority of pallets circulating in the United States are common white pine pallets that come in varying shapes, sizes, and level of quality and bear no trademarks or names. These pallets, bearing no coloring or demarcation, are often called white wood pallets.

8. In general, these pallets are *bought* by manufacturers who place their product on these wooden platforms. The manufacturers then sell their product, along with the white wood pallet, to their distributors. The distributors then re-use these white wood pallets and sell the excess to pallet dealers or recyclers, who may repair the pallets and resell them to those in need of pallets, or mulch the pallets.

9. The strength of a pallet is crucial to its usefulness. Pallets that are not adequately inspected and maintained are prone to break because of the constant handling by manufacturers, distributors, and retailers. Such breakage often results in damage to the goods being transported and, at times, injuries to the individuals working with or around the pallet.

### CHEP Pallets

10. CHEP offers a better option for the pallet needs of manufacturers and/or distributors of products and goods.

11. Instead of purchasing new or recycled pallets for each shipment, manufacturers can lease pallets from CHEP as part of a national pallet pool. CHEP, which operates out of over 150 CHEP service centers across the United States, leases its pallets, pursuant to its form of pallet rental agreement.

12. Through CHEP's national pallet pool, manufacturers receive and ship products on uniform, high quality pallets owned and maintained by CHEP and, after inspected and repaired, if necessary, are used over and over again by the manufacturers to ship their products.

70546181;3

13. CHEP has invested significant resources, in time and money, in maintaining superior, reliable, and safe pallets.

14. The CHEP pallet pool rental system involves the shared use of high-quality pallets by multiple customers or users. Although there are variations, the following is a general explanation of how the system works: CHEP leases its pallets to manufacturers who use the CHEP pallets as a platform for the transportation of goods to their distributors. The distributors in turn use the CHEP pallets within their distribution system until the original manufacturer's product is emptied from the pallet. The empty pallets are then set aside for return to or collection by CHEP. At CHEP service centers across the country, the empty CHEP pallets are inspected, cleaned, repaired and/or repainted (if necessary) and then sent back to manufacturers to repeat the cycle again.

15. CHEP's unique system, where high quality pallets are constantly maintained, controlled, tracked, and reused, benefits the entire supply chain. Manufacturers receive consistent, high-quality pallets, reduced pallet expense, reduced transportation costs, and reduced product damage. Distributors and retailers benefit from faster loading and unloading, reduced product damage, and reduced pallet expense.

16. Importantly, the consistent high quality of CHEP's pallets significantly reduces the number of accidents caused by faulty or damaged pallets. Safety is improved at all levels from the manufacturer's plant to the distribution center to the retail store.

17. CHEP's system also removes costs and environmental burdens associated with waste disposal. CHEP estimates that its pallet program saves more than two million tons of solid waste each year. CHEP pallet materials that are no longer usable are mostly recycled into mulch for uses such as animal bedding and industrial sweeping compounds.

18. Given these benefits, it is not surprising that CHEP's pallet pool has been popular with manufacturers and distributors. CHEP continues to invest tens of millions of dollars a year to maintain and supplement its pallet pool.

19. ***CHEP never sells its pallets***. The success—indeed the existence—of CHEP's pallet pool rests on the fundamental principle that ***CHEP maintains ownership over all of its pallets***, which permits CHEP to inspect its pallets regularly to ensure that they continue to meet CHEP's high and consistent quality and strength standards.

20. CHEP's agreements with manufacturers and distributors expressly provide that CHEP owns the CHEP pallets and that the CHEP pallets may never be bought and sold. All CHEP pallets are painted blue on their sides, are inscribed with CHEP's logo, and bear the words "PROPERTY OF CHEP." Many CHEP pallets also bear the company's toll-free telephone number.

21. Pursuant to its Rental Agreement, CHEP always retains absolute ownership of all of its pallets.

22. The leasing process begins with CHEP entering into an agreement with a manufacturer of goods in need of pallets.

23. In order to retain control and dominion over its pallets, CHEP also enters into pallet retention and return agreements with downstream commercial entities, such as distributors. Before a lessee can ship its product on a CHEP pallet to a downstream entity, it must first obtain approval from CHEP, or must know that the downstream entity is already a customer of CHEP.

24. CHEP typically charges its lessees a pallet rental fee on each CHEP pallet within their possession. In this manner, CHEP has created a "leasing pool" of CHEP pallets, and it typically falls on the secondary customer, not the lessee, to return CHEP pallets to CHEP.

70546181;3

25. CHEP makes a concerted effort to track the flow of its pallets. A large number of CHEP employees are dedicated in whole or in part to the protection, recovery, and retrieval of pallets, including logistics managers and coordinators, asset recovery managers and representatives, and office-based analysts and administrative personnel. During CHEP's most recently concluded fiscal year, *i.e.*, from July 1, 2018 through June 30, 2019, CHEP's asset recovery team conducted more than 81,000 calls and physical visits. In particularly egregious cases, CHEP pursues legal action, both in cooperation with governmental enforcement authorities and independently, to protect, recover and retrieve its pallets. In visiting an entity with which it does not have a contractual relationship, such as a recycler, CHEP will make overtures to that entity to consider entering into an agreement with CHEP.

26. The approximate cost to manufacture each CHEP pallet is currently $35.00.

### Defendant's Improper Retention and Use of CHEP Pallets

27. Inevitably and unfortunately, CHEP is unable to recover all of its pallets.

28. Defendant does not have any contractual or other business relationship with CHEP and should never be in possession of any CHEP pallets.

29. Based on observation, Defendant uses, sells, and otherwise disposes of CHEP's pallets. CHEP representatives have observed Defendant possessing, selling, and disposing of CHEP's pallets.

30. The allegations below outline just some of the Defendant's activities.

31. In May of 2021, CHEP representatives visited Defendant's location at 7781 NW 73rd Court, Medley, FL 33166 (the "Medley Facility") and observed Defendant loading CHEP Pallets into a white semi-truck trailer with Defendant's name and logo on the side. The CHEP representatives further observed Defendant loading the CHEP Pallets to sell to another entity,

Bouquet Collection Services ("Bouquet"), without any authorization from CHEP. True and correct copies of photographs showing Defendant loading CHEP Pallets into its trailer and delivering the same CHEP Pallets to Bouquet are attached hereto and incorporated by reference herein as **Composite Exhibit A**.

32. Based on such observations, CHEP hired a third-party investigator (the "Investigator") to observe and document Defendant's possession and sale of CHEP Pallets to other entities without CHEP's permission. A true and correct copy of the Investigator's report, depicting the Investigator's observations of Defendant possessing and selling CHEP Pallets, is attached hereto and incorporated by reference herein as **Exhibit B**.

33. On or about September 23, 2021, the Investigator observed hundreds of CHEP Pallets in Defendant's possession at the Medley Facility. A true and correct copy of a photograph showing CHEP Pallets at Defendant's location is attached hereto and incorporated by reference herein as **Exhibit C**. On the same day, the Investigator observed Defendant purchasing CHEP Pallets from other entities and selling CHEP Pallets to other entities.

34. On or about September 24, 2021, the Investigator observed CHEP Pallets located on Defendant's premises at the Medley Facility. The Investigator also observed a trailer with Defendant's name and logo being loaded with CHEP Pallets. A true and correct copy of a photograph showing CHEP Pallets being loaded into Defendant's trailer is attached hereto as **Exhibit D**. This same trailer then departed to Defendant's 11000 NE 36th Ave., Miami, FL facility (the "Miami Facility"). A true and correct copy of a photograph showing this trailer backing up to the Miami Facility is attached hereto as **Exhibit E**. This same trailer then departed the Miami and arrived at Incredible Fish, 7560 NW 43rd St., Miami, FL where it backed into Incredible Fish's facility. Upon information and belief, Defendant sold CHEP Pallets to Incredible Fish.

35. On or about October 11, 2021, the Investigator observed Defendant purchase and sell several CHEP Pallets from the Medley Facility. True and correct copies of photographs showing CHEP Pallets at the Medley Facility are attached hereto as **Exhibit F**.

36. On or about October 12, 2021, the Investigator observed hundreds of additional CHEP Pallets at the Medley Facility and the Miami Facility. The Investigator again observed Defendant selling and transporting CHEP Pallets without CHEP's permission numerous times to several different entities throughout the day, including to American Beverage Depot. True and correct copies of photographs showing Defendant's possession and sale of CHEP's pallets are attached hereto as **Composite Exhibit G**.

37. On or about October 13, 2021, the Investigator observed Defendant selling CHEP Pallets to Bouquet. True and correct copies of photographs showing Defendant's semitrucks, and Defendant's possession and sale of CHEP's pallets are attached hereto as **Composite Exhibit H**.

38. On or about November 18, 2021, CHEP representatives visited Defendant's Medley Facility and observed Defendant in possession of hundreds of CHEP Pallets. A true and correct copy of a photograph showing hundreds of CHEP Pallets on Defendant's premises are attached hereto and incorporated by reference herein as **Exhibit I**. At this time, CHEP representatives spoke with Felix Hernandez of Defendant, explained CHEP's ownership of CHEP's pallets, and tried to schedule appointments for the following week to pick up the CHEP Pallets on Defendant's premises.

39. On or about November 4, 2022, CHEP representatives visited Amcar Freight ("Amcar") at 10100 NW 25th Street, Doral, FL 33172 and observed three hundred nineteen (319) CHEP Pallets on the premises. A true and correct copy of a photograph showing the CHEP Pallets on Amcar's premises is attached hereto and incorporated by reference herein as **Exhibit J**. The

CHEP representatives spoke with an employee of Amcar who explained that he had purchased the CHEP Pallets from Defendant and provided bills of lading evidencing Defendant's sale of the CHEP Pallets. True and correct copies of the bills of lading are attached hereto as **Exhibit K**.

40. CHEP has notified both Defendant on numerous occasions regarding CHEP's ownership rights with respect to CHEP pallets and that any actions to buy, sell, use, dismantle, destroyed, etc. such CHEP pallets violates CHEP's rights. For example, in November 2022, CHEP sent a letter to Defendant notifying Defendant of CHEP's rights and requesting that Defendant cease and desist its activities.

41. Defendant are not authorized by CHEP to possess CHEP Pallets.

42. CHEP's pallets are exclusively the property of CHEP.

43. Defendant is culpable for the improper retention and use of CHEP Pallets.

44. Upon information and belief, Defendant is in possession of and has purchased and sold thousands of CHEP pallets.

## COUNT I
## CONVERSION

45. CHEP restates and incorporates paragraphs 1–44 above.

46. At the time Defendant came into possession of CHEP's pallets, Defendant did not own CHEP's pallets and did not have any right to possess CHEP's pallets.

47. Defendant has taken CHEP's pallets and continue to exercise ownership over CHEP's pallets despite notice that Defendant does not have any ownership rights with respect to CHEP's pallets and does not have any right to possess CHEP's pallets.

48. Defendant's actions are inconsistent with CHEP's ownership of CHEP's pallets.

49. CHEP has been damaged by Defendant's continued actions with respect to CHEP's pallets.

70546181;3

WHEREFORE, Plaintiff CHEP USA respectfully requests the Court enter a Final Judgment in Plaintiff CHEP USA's favor and against Defendant, Cienfuegos Pallets, Corp.:

    i.    In the amount of damages suffered as well as any interest arising therefrom;

    ii.    Issuing a permanent injunction (a) against any further possession of CHEP's pallets without permission from CHEP and (b) mandating that Defendant return to CHEP any of CHEP's pallets currently in Defendant's possession; and

    iii.    Granting such other and further relief as the Court deems just and proper.

## COUNT II
## REPLEVIN

50. CHEP restates and incorporates paragraphs 1–44 above.

51. This is an action to recover possession of CHEP's pallets by virtue of a writ of replevin pursuant to section 78.055, Florida Statutes.

52. CHEP's pallets include all of CHEP's pallets located at Defendant's business operations facilities, specifically at: (i) 11000 NW 36th Avenue, Miami, FL 33167; and (iii) 7781 NW 73rd Court, Medley, FL. CHEP seeks to possess CHEP's pallets located at these locations.

53. CHEP is entitled to possession of CHEP's pallets as the true owner of CHEP's pallets.

54. CHEP's pallets are wrongfully detained by Defendant.

55. To CHEP's best knowledge, information and belief, Defendant is retaining possession of CHEP's pallets because Defendant believes that Defendant is entitled to ownership of CHEP's pallets.

56. CHEP's pallets have not been taken for any tax, assessment, or fine pursuant to law. CHEP's pallets have not been taken under an execution or attachment against CHEP's pallets.

70546181;3

WHEREFORE, Plaintiff CHEP USA respectfully requests that the Court issue a Writ of Replevin as to CHEP's pallets and grant such other relief as this Court deems just and proper.

## COUNT III
## DECLARATORY JUDGMENT

57.  CHEP restates and incorporates paragraphs 1–44 above.

58.  This is a claim for declaratory judgment pursuant to Section 2201 of title 28 of the United States Code.

59.  CHEP takes the position that CHEP's pallets are solely and exclusively CHEP's property and that Defendant does not have any ownership or other rights to CHEP's pallets.

60.  Defendant takes the position that Defendant owns and may exercise ownership over CHEP's pallets.

61.  There is an actual, bona fide, practical, and present need for a declaratory relief and a continuing controversy between the parties regarding their respective rights and obligations.

62.  In light of the foregoing, CHEP is entitled to the declaratory relief sought herein because, *inter alia*, (i) there is a present controversy based upon the facts alleged above; (ii) CHEP's rights are dependent upon the facts alleged above; (iii) Defendant has an actual, present, adverse, and antagonistic interest in this matter; (iv) all antagonistic and adverse interests are before the Court by proper process; and (v) the issues raised by CHEP are not propounded from curiosity and the relief sought is not merely the rendering of legal advice by the Court; there is a bona fide need for a declaration based on present, ascertainable facts.

63.  Absent the issuance of declaratory relief, CHEP will be irreparably injured.

WHEREFORE, Plaintiff CHEP USA respectfully requests that the Court enter a judgment in its favor and against Defendant, Cienfuegos Pallets, Corp.:

   i.  Declaring that CHEP has sole and exclusive ownership over CHEP's pallets; and

ii. Awarding CHEP such other relief, including any supplemental relief, including injunctive relief, pursuant to Section 2201 of title 28 of the United States Code, as the Court deems just and proper.

Dated: July 20, 2023

Respectfully submitted,

/s/ Samual A. Miller
Samual A. Miller, Esquire
Florida Bar No. 034491
AKERMAN LLP
420 South Orange Avenue
Suite 1200
Orlando, FL 32801
Phone: (407) 423-4000
Fax: (407) 843-6610
E-mail: samual.miller@akerman.com

*Counsel for Plaintiff CHEP USA*

70546181;3

## VERIFICATION TO VERIFIED COMPLAINT

STATE OF _____     )
                             ) ss:
COUNTY OF_____      )

Before me, the undersigned authority, personally appeared_____
_____, who being duly sworn deposes and says:

1.  My name is_____, and I am the _____of CHEP USA (CHEP"), the Plaintiff in the above-captioned action. I am over the age of twenty-one (21) and am competent to make this Affidavit and have personal knowledge of the facts set forth herein.

2.  All records attached to the Verified Complaint filed herein are true and correct copies of documents created at or near the time of the described events by, or from information transmitted by, a person with knowledge of the described events. In addition, all of these documents were kept in the course of a regularly conducted business activity and it was the regular practice of that business activity to make such documents.

3.  I have read the Verified Complaint filed herein and state that the facts set forth in the Verified Complaint, as contained in paragraphs 1 and 7 through 44 are true and correct.

**FURTHER, AFFIANT SAYETH NAUGHT.**

_____Mario Birsa_____

as __Mario Birsa__,
for Plaintiff CHEP USA

STATE OF __Arizona__     )
                         ) ss:
COUNTY OF __Maricopa__   )

The foregoing instrument was sworn to and subscribed before me by means of physical presence or online notarization this 21st day of July, 2023, by Mario Anthony Birsa, as _____ of Plaintiff CHEP USA, who is:

    personally known to me; or
    X produced a driver's license issued by the __Arizona__ Department of Highway Safety and Motor Vehicles as identification; or
    produced the following identification: _____

_____
NOTARY PUBLIC, STATE OF ~~FLORIDA~~ Arizona

_____
(Print, Type or Stamp Commissioned Name of Notary Public)

WILLIAM LEWANDOWSKI
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 630735
Expires June 22, 2026

13

70546181;3